## STATE *vs.* LUGI PUCCA.

*Criminal Law— Using Female Child for Sexual Intercourse—Examination of the Child by Physician by Order of Court— Evidence— Witness—Reputation in Former Home— Conduct of Prosecuting Witness with Other Persons—Character Testimony.*

1.   During a trial for using a female child for the purpose of sexual intercourse, the Court will, under certain circumstances, order an examination of the child by a physician satisfactory to both sides, when it is contended by the defendant that such examination will disclose that the offense alleged was not committed.

2.   Improper relations or conduct of the prosecuting witness with persons other than the defendant, are not material and cannot be shown.   The prosecuting witness cannot be asked in cross examination about such relations, even to test her veracity.

3.   A witness for the defendant may be asked about the general reputation of the prosecuting witness for truth and veracity in her former home, if she has recently moved therefrom, and has had but a brief residence where the alleged offense was committed.

4.   Testimony of the previous good character of the defendant, when offered in the case, is to be taken like any other evidence tending to show the innocence of the accused, and for whatever that testimony is worth under all the facts and circumstances of the case.

(*May 27, 1902.*)

LORE, C. J., and GRUBB, J., sitting.

*Herbert H. Ward,* Attorney-General, and *Robert H. Richards,* Deputy Attorney-General, for the State.

*Howell S. England* for the defendant.

Court of General Sessions, New Castle County, May Term, 1902.

The prisoner was indicted at this term upon the charge of USING A FEMALE CHILD FOR THE PURPOSE OF SEXUAL INTERCOURSE.

At the trial the State adduced evidence to the effect that the prosecuting witness, Rosalio Emiedo, an Italian girl, was twelve years old at the time of the commission of the alleged crime on February 1, 1902; that on said date the prisoner had sexual intercourse with the prosecuting witness in the bed-room of his house at Second and Washington streets in the city of Wilmington; that afterwards he showed her a large knife and said to her if she told on him he would kill her, and thereupon gave her some money and let her go to her home; that the child did not tell her mother, but on the. contrary, endeavored to conceal the crime from her mother; that finally the latter, suspecting that something was wrong with the child, questioned the latter and discovered what the trouble was; that afterward the police surgeon, on behalf of the State, made an examination of the girl's private parts, and as a result thereof found her physical condition to be not inconsistent with the story that she had told.

*England,* for the defendant, asked the Court to order an examination of the prosecuting witness by a physician other than the police surgeon, stating that he desired this to be done for the purpose of showing that she was not physically capable of sexual intercourse, and that a fair examination of her parts would show that fact, and that, therefore, she had not been used for the purpose of sexual intercourse.

Upon the request of the Court that counsel produce authorities in support of his motion, Mr. England presented the following brief:

### BRIEF OF THE DEFENDANT.

In many of the States the power to order a direct examination of the body of a person is asserted as one of the general powers of the Court.

*Shroeder, vs. Chicago etc., 47 Iowa, 375 ; Hall vs. Man-*

son, *99 Iowa, 698 ; White vs. Milwaukee, etc., Co., 61 Wis., 536 ; O'Brien vs. Lacrosse, 99 Wis., 421 ; Hatfield vs. St. Paul, 33 Minn., 130.*

In some instances the right of the defendant to have such an examination made has been held or intimated to be an absolute one upon a proper showing made.

*Ala., etc., Co. vs. Hill, 90 Ala., 71 (16 Ency. of Pl. & Pr. 492 (493) ; Hatfield vs. St. Paul, etc., Co., Supra.*

The great weight of authority in those States where the power to direct a physical examination is conceded is that the application for such an examination is addressed to the sound discretion of the Court.

*O'Brien vs. Lacrosse, Supra ; Joilet, etc., Co. vs. Call, 42 Ill. Appeals, 41.*

The examination may be ordered on a fair showing that the ends of justice require the disclosure or more certain ascertainment of facts which can be brought to light and more fully illustrated only by such examination.

*Belt Electric Line Co. vs. Allen, 44 S. W. Rep., 89 (Ency. Pl. & Pr., 492.)*

The fact that the plaintiff is a young woman of nervous temperament and delicate feelings is not a sufficient cause for overruling a motion for a physical examination of her person.

*Ala., etc., Co. vs. Hill, 90 Ala., 71 (Ency. Pl. and Pr., Supra.)*

It is error to refuse a physical examination of the plaintiff's person on the ground that an examination has already been made by the plaintiff's physician who has deposed to the injuries complained, of where the opinions and conclusions of such physician are not concurred in by several other reputable surgeons.

*Ala., etc., Co. vs. Hill, Supra.*

In suits for divorce because of impotence it is well settled that the Court has the power to order a physical examination.

*Stephen's Digest of the Law of Evidence, (Chase's Edition,) page 128, note citing 2 Bishop on Marriage and Divorce, Sec. 590 ; Shroeder vs. Chicago, etc., Railway Co., 47 Iowa, 375 (382).*

*Ward, Attorney- General,* contended that the cases cited by the counsel for defendant, in favor of his proposition, were civil cases and that the same could have no bearing upon the question before the Court, because the Superior Court had already decided in civil cases, that they will not compel by way of cross examination, or in any other way, the examination of the body of a witness. The Attorney-General further stated that if the Court should conclude to make the order, that the physician selected be one who was agreeable to both parties.

*Mr. England :*—I agree to that.

LORE, C. J.:—We make the order that the prosecuting witness be examined by a competent physician during the noon recess, and under such circumstances as to insure entire fairness. The Court understands that Dr. Josephine M. R. White is satisfactory to both the State and the counsel for the defendant. The doctor will, therefore, make the examination under the direction of the Court.

*Mr. England* asked the prosecuting witness, in cross examination, the following question :

"Tell the Court whether or not, about the first of April of this year, George Shelton did not, in going into a privy near the home of Lugi Pucca, find you in there with two little boys ?"

(Objected to by the Deputy Attorney-General as immaterial.)

*Mr. England* stated that he was not attempting to impeach the moral character of the prosecuting witness but was only testing her veracity ; that if she denied in her reply that she was there with the two boys on the occasion mentioned, he could prove that she was and thus contradict her.

LORE, C. J.:—The question being entirely immaterial and

irrelevant to this issue, you could not contradict her, but would be bound by her answer.    We sustain the objection.

Counsel for defendant asked one of his witnesses the following question :

" Are you acquainted with the general reputation for truth and veracity of Rosalio Emiedo in the community in which she has lived up to within two months of this time, at Natalie, Pennsylvania ? "

(Objected to by the Attorney-General as irrelevant, the proper form of the question being, whether the witness knows the reputation of the prosecuting witness in the community in which she *now* lives.)

LORE, C. J.:—Do you propose to follow that up and connect it with the present time ?

*Mr. England :*—Yes, sir.    These people have just come to town and it was impossible to get anybody that knew of them here. This witness has known this prosecuting witness for years at Natalie, Pennsylvania, the town from which they moved to Wilmington some time in January of this year.

LORE, C, J.:—We think it is admissible ; but bring it within a month or two of the present time.

(The witness then testified that he knew the reputation of the prosecuting witness at Natalie, Pennsylvania, that it was bad, and from that reputation he would not believe her on her oath.    The testimony on both sides was then closed.)

LORE, C. J., charging the jury :

Gentlemen of the jury :—Lugi Pucca, the prisoner at the bar,

is charged in the indictment with using for the purpose of sexual intercourse, on the first day of February, 1902, in this county, Rosalio Emiedo, a female under eighteen years of age.

The charge is brought under the act of Assembly, passed on March 29, 1889, which provides that, "Whoever takes, receives, employs, harbors or uses or causes or procures to be taken, received, employed, harbored or used a male or female under the age of eighteen years, for the purpose of sexual intercourse, shall be deemed guilty of a misdemeanor."

Under this indictment it is incumbent upon the State to prove to your satisfaction, beyond a reasonable doubt, that on or about the time alleged in the indictment, in this county, the prisoner, Lugi Pucca, did use this child, she then being under eighteen years of age, for the purpose of sexual intercourse.

Crimes of this character are not ordinarily perpetrated in the open, but privately and secretly and they usually depend largely upon the testimony of the two participants in the offense, if any such was committed. This is a charge which in common experience is comparatively easy to prove, but difficult to meet.

In order to find a verdict of guilty in this case you should be satisfied from the evidence, beyond a reasonable doubt, that in this county, on the day alleged, this prosecuting witness was so used, and that she was then under eighteen years of age.

And in considering the evidence, we would call your attention, as requested by defendant's counsel, to the fact that testimony of the previous good character of the defendant, when offered in the case, is to be taken like any other evidence tending to show the innocence of the accused, and for whatever that testimony is worth, in your judgment, under all the facts and circumstances of the case.

Again, it is incumbent on the State to prove all the material facts of this case. Such, for instance, as the minority of the child, the perpetration of the crime in this county, and the actual fact of sexual intercourse—beyond a reasonable doubt; for if there be a reasonable doubt from the testimony upon any one of these essen-

tial elements of the crime, that doubt should inure to the benefit of the accused, in a verdict of not guilty.

You have heard the evidence in this case, and it is for you to say, upon that evidence, whether the prisoner, Lugi Pucca, is guilty of the crime charged or not guilty.

Verdict, not guilty.